IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LESEY FAY, et al.,**

    **Plaintiffs,**

    v.                                         Civ. No. 17-1054 MV/SCY

**THE HARTFORD INSURANCE
COMPANY, et al.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING LEAVE TO AMEND COMPLAINT

**THIS MATTER** comes before the Court on Plaintiffs' Motion For Leave To File Amended Complaint, filed May 8, 2018. Doc. 20. Defendant Sentinel Insurance Company (Sentinel) filed a response in opposition on June 1, 2018. Doc. 22. Plaintiffs filed a reply on June 15, 2018. Doc. 24. The Court orders that Plaintiffs' Motion be **GRANTED** for the reasons explained below.

### I. Background

On June 23, 2017, Plaintiffs filed the present lawsuit in state court bringing claims for breach of fiduciary duty, breach of contract, and bad faith. Doc. 1-1 at 2-3.[1] According to Plaintiffs, they operated a business in Taos, New Mexico called Graham's Grille. Doc. 1-1 at 5. Due to "difficulties with the municipal sewer system that served the restaurant, the business was forced to close in September 2013." Doc. 1-1 at 7. Plaintiffs had purchased "Business Interruption insurance" from Defendants for the restaurant in 2006, so they made a claim for damages due to being forced to shut down. Doc. 1-1 at 6-7. As of the date of the filing of the

---

[1] Throughout this opinion, the Court uses the page numbers generated in the headers of filed documents by the CM-ECF system.

lawsuit, Defendants had neither paid nor denied the claim. Doc. 1-1 at 7.

On July 30, 2017, also in state court, Plaintiffs filed a First Amended Complaint, asserting claims for Breach of Contract, Insurance Bad Faith, Violation of Insurance Code, Violation of Unfair Practices Act, and Punitive Damages. Doc. 1-1 at 5-10. Defendant Sentinel represents that it was served on September 27, 2017. Doc. 1 at 9. On October 20, 2017, Sentinel removed this case to federal court, alleging the existence of subject matter jurisdiction based on diversity of citizenship due to the fraudulent joinder of the sole defendant who is a citizen of New Mexico—Craig Beaudry, who allegedly sold the insurance policy in question. Doc. 1 at 3-5. Plaintiffs did not file a motion to remand.

Sentinel filed a motion to dismiss on November 10, 2017. Doc. 6. In that motion, Sentinel argued that Plaintiffs' claim for lost business income is excluded by the applicable insurance policy and, furthermore, is untimely. *Id.* Also on November 10, Defendant Hartford Financial Services Group (HFSG) moved to dismiss all claims against it for lack of personal jurisdiction. Doc. 7. Plaintiffs did not oppose that motion. Doc. 13.

On May 8, 2018, Plaintiffs moved for leave to file a Second Amended Complaint. Doc. 20. Plaintiffs wish to add more detail to their factual allegations regarding the defects with the Taos municipal sewer system, and regarding Plaintiffs' claim against Defendant Beaudry. Doc. 20 at 2.[2] Defendant Sentinel filed an opposition, arguing that the proposed amendment about the sewer system would be futile because the Second Amended Complaint would still fail to state a claim against Sentinel. Doc. 22. No other defendant filed a response.

---

[2] Despite the fact that the Plaintiffs did not oppose the dismissal of HFSG, Doc. 13, the proposed Second Amended Complaint still purports to bring claims against it. Doc. 20-1 at 1, 3.

## II. Jurisdiction

Because the Court always has a *sua sponte* duty to ensure it has subject-matter jurisdiction, the Court carefully examined the Notice of Removal filed Defendants filed. *See Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party . . . .").

As set forth above, the Notice of Removal contends that Defendant Beaudry was fraudulently joined. The Court does not necessarily agree. "'The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff.'" *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). To succeed on fraudulent joinder, removing defendants must clear a "high hurdle." *Id.* at 989. The question of fraudulent joinder is not to be confused with whether "plaintiffs have stated a valid claim" against the allegedly fraudulently joined parties. *Id.* In sum, the argument that "conclusory allegations" against Defendant Beaudry should be disregarded simply will not satisfy this standard. *Cf.* Doc. 1 at 5. Statute-of-limitations arguments, if they are factually complicated, will likewise fail to satisfy this standard. *See, e.g.*, *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943, 950 (D. Md. 2004).

Nonetheless, even if Defendant Beaudry is not fraudulently joined, the Notice of Removal does adequately allege facts supporting the Court's original jurisdiction, pursuant to the alienage provision of 28 U.S.C. § 1332(a)(2) and a sufficient amount in controversy. *See* Doc. 1 at 2-3 (Plaintiffs are citizens of Mexico; Defendants are citizens of Connecticut, Arizona, New Mexico, and Delaware). To be sure, the First Amended Complaint alleges that Plaintiffs are

*residents* of Mexico. First Am. Compl. ¶ 1. But "[a]n individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). Plaintiffs should promptly inform the Court if the Notice of Removal's allegations are incorrect.

Since original jurisdiction is established by the allegations in the Notice of Removal, the Court may not *sua sponte* remand to state court. *Feichko v. Denver & Rio Grande W. R. Co.*, 213 F.3d 586, 591 (10th Cir. 2000) ("[R]emoval in violation of a statutory provision does not deprive a federal district court of subject matter jurisdiction so long as the court would have had original jurisdiction over the case had it been filed there in the first instance."). To the extent there are any procedural or statutory defects in removal due to Defendants' potentially incorrect fraudulent joinder assertions, Plaintiffs have waived them by failing to move to remand the case to state court within 30 days. 28 U.S.C. § 1447(c). *Sua sponte* remand to state court would therefore be inappropriate. *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). The Court will proceed to the merits of Plaintiffs' Motion.

### III. Discussion

Federal Rule of Civil Procedure 15 permits a plaintiff to amend a complaint as of right within 21 days after serving it or 21 days after service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiffs here have already amended their complaint once as a matter of right and so must now seek leave of court. *Id.*[3]

---

[3] The First Amended Complaint was filed in state court, but after removal, "the Court is to treat all pleadings filed in state court as if they were filed in federal court." *Van Leeuwen v. SIB Mortg. Corp.*, No. 2:10-CV-730-TS, 2011 WL 13798, at *2 (D. Utah Jan. 4, 2011) (unpublished) (citing Fed. R. Civ. P. 81(c)(2)). "Accordingly, this Court must treat the amendment Plaintiff made to her original complaint while in state court as the single 'matter of course' amendment

Sentinel argues that Plaintiffs should not get a third bite at the apple, having failed to state viable claims in their first two complaints. Doc. 20 at 1. The Court does not necessarily agree that Plaintiffs are precluded from amending simply because they have amended previously. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave should be granted. *Id.*

Sentinel argues that the proposed amendment would be futile. Doc. 20 at 2. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). Therefore, "[t]he futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . ." *Id.* Sentinel argues that the proposed amendment does not cure the identified defects in the First Amended Complaint: coverage would still be excluded under the policy language; the lawsuit would still be untimely; and the Unfair Practices Act (UPA) claim would still be subject to dismissal. *Id.* at 2-5. The Court disagrees that the Second Amended Complaint would be subject to dismissal on these grounds, and so orders that the amendment be permitted.

  A. <u>Without More Facts, the Court Cannot Agree with Sentinel that There Is No Insurance Coverage Under The Policy.</u>

The proposed Second Amended Complaint contains the following allegations pertaining to the closure of Plaintiffs' business:

---

permitted under Rule 15." *Cwiak v. City of Phx.*, No. CV09-1858-PHX-MHM, 2010 WL 1742531, at *2 (D. Ariz. Apr. 29, 2010) (unpublished).

> 11. During the entirety of the existence and operation of the restaurant, the restaurant had difficulties with the municipal sewer system that served the restaurant. **The difficulties were because the sewer pipes owned by the Town of Taos and leading to the Plaintiffs' business were old, were probably clay pipes, were collapsed, were clogged with rocks and roots and the Town of Taos refused to replace or otherwise repair the sewer pipes.**
>
> 12. In or about September 2013 Graham's Grille was forced to close for business as a result to of **the defects in** the municipal sewer system.

Doc. 20-1 at 2-3 (emphasis in original, to demonstrate the differences between the First Amended Complaint and the proposed Second Amended Complaint).

Sentinel asserts that there is no coverage under its insurance policy given these facts. Doc. 22 at 2-3; *see also* Doc. 6 at 2-4 (motion to dismiss). Because the insurance policy language is "referred to by the complaint and [is] integral and central to the plaintiff's claim," the Court may rely upon it without converting the present motion into a motion for summary judgment. *See New Mem'l Assocs. v. Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1029 (D.N.M. 1997) (relying on the underlying insurance policy as attached to the response to the motion to dismiss).

The insurance policy covers "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called 'scheduled premises' in this policy) caused by or resulting from a Covered Cause of Loss." Doc. 6-1 at 29. "Business Income" is a covered loss, if the suspension of business operations is "caused by direct physical loss of or physical damage to property . . . caused by or resulting from a Covered Cause of Loss." *Id.* at 38. "Covered Causes of Loss" are defined as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: a. Excluded in Section B., EXCLUSIONS; or b. Limited in Paragraph A.4. Limitations; that follow." *Id.* at 30. One of the "Section B" exclusions is: "Water that backs up from a sewer or a drain." *Id.* However, the policy also includes a "Restaurant Stretch," which

specifically adds "Additional Coverage" for "direct physical loss or physical damage to Covered Property solely caused by water that backs up from a sewer or a drain." *Id.* at 92.

Finally, the policy includes an endorsement entitled "PERILS SPECIFICALLY EXCLUDED." *Id.* at 130. A warning at the top of the page explains: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." *Id.* The endorsement provides:

> As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.
>
> Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:
>
> > A. ACTS, ERRORS OR OMISSIONS by you or others in:
> >
> > . . . .
> >
> > 3. The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:
> >
> > . . . .
> >
> > b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities . . . .

*Id.*

Plaintiffs argue that the policy materially contradicts itself, rendering coverage ambiguous in a way that must be construed against the insurer. Doc. 15 at 4-5. This argument cannot be presently characterized as futile. The policy is indeed difficult to read and does appear to contain internal contradictions. The exclusion for damage caused by water backed up from the sewer is hard to reconcile with the subsequent inclusion for the same thing. *Compare* Doc. 6-1 at

44 and 92. In addition, "Covered Causes of Loss" include all risks of physical loss unless they are excluded in "Section B" or "Limited in Paragraph A.4." *Id.* at 30. The section on "Perils Specifically Excluded," however, is located in neither Section B nor Paragraph A.4, but instead in a seemingly stand-alone attachment that can only be found a hundred pages later in the policy. *Id.* at 130.

Without more information, the Court cannot actually determine whether the policy is ambiguous. There is no information as to whether all the policies, inclusions, and endorsements were issued at the same time, or whether (for example) Plaintiffs paid an additional price for any additional coverage or received a discount for additional exclusions. There is no information as to whether Plaintiffs were ever made aware that the "Perils Specifically Excluded" modified the grant of coverage, even though it is not located in Section B or Paragraph A.4 but is instead found a hundred pages later in a policy that spans a total of 154 pages. Doc. 6-1. As a matter of law, at this stage of the case, the Court cannot conclude whether it is reasonable to adopt Sentinel's interpretation of the policy.

Sentinel argues that none of these contradictory sections are relevant because coverage depends on the existence of "direct physical loss of or physical damage to property," and Plaintiffs did not submit a claim for direct physical loss or physical damage. Doc. 19 at 4; *see* Doc. 15 at 6 ("Plaintiffs are not making a claim for physical damage to the restaurant . . . ."). While Plaintiffs may not be asking for reimbursement for physical damages, that does not mean that no physical damage to their restaurant ever took place. If Plaintiffs did suffer physical damage to their property, they presumably could choose to waive a claim for those repairs but proceed on their claim for "Business Income," if the suspension of business operations is "caused by direct physical loss of or physical damage to property." Doc. 6-1 at 38. Indeed,

materials submitted by Sentinel demonstrate that Plaintiffs frequently had to pay for a contractor to come fix their restaurant after sewage backups. Doc. 1-5 at 3.

The Court does agree with Sentinel that, if the rest of the contract is not found to render it ambiguous, the endorsement for "Perils Specifically Excepted" does preclude Plaintiffs' claims here. It excludes loss that in any way results from "acts, errors or omissions by . . . others in . . . [t]he design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of . . . sewers . . . ." Doc. 6-1 at 130. Plaintiffs' factual allegations in the proposed Second Amended Complaint fit squarely within this language. Plaintiffs allege that Taos had "old" sewer pipes (i.e., Taos omitted to renovate or remodel the sewer) that were "probably made out of clay" (i.e., Taos erred in the design and construction of the sewer) and were "collapsed" and "clogged with rocks and roots" (i.e., Taos omitted to repair the sewer). As discussed above, however, it is not clear whether other sections of the policy render the inclusion of this endorsement ambiguous.

  B. <u>Plaintiffs' Allegations Sufficiently Establish that Their Claim Is Timely.</u>

The insurance policy requires that a "legal action" against Sentinel be brought "within 2 years after the date on which the direct physical loss or physical damage occurred." Doc. 6-1 at 48. Because Plaintiffs went out of business in September 2013, Sentinel argues this suit should have been brought by September 2015 (almost two years before the June 23, 2017 date on which Plaintiffs filed their lawsuit). Doc. 22 at 5.

The limitations period relied on by Sentinel is contractual, rather than statutory. Plaintiffs argue that a breach of contract by the insured does not relieve the insurer of its own obligations under the contract. Doc. 24 at 2 (citing *Foundation Reserve Ins. Co. v. Esquibel*, 1980-NMSC-019, ¶ 15, 607 P.2d 1150, 1152). In *Foundation Reserve*, the New Mexico Supreme Court held

that an insurer "must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before it will be relieved of its obligations under a policy." 1980-NMSC-019, ¶ 15. However, that case was not decided in the context of a time-to-sue provision. As Sentinel points out, other cases in New Mexico have held that time-to-sue provisions are generally enforceable. Doc. 6 at 4 (citing *Young v. Seven Bar Flying Serv., Inc.*, 1984-NMSC-069, ¶ 8, 101 N.M. 545, 547). And the New Mexico Supreme Court has specifically found that "[w]here the insurer raises the affirmative defense of violation of a time-to-sue provision, it need not show that it was prejudiced by violation of the provision." *Green v. Gen. Acc. Ins. Co. of Am.*, 1987-NMSC-111, ¶ 9, 106 N.M. 523, 525.

The insurer, however, "may be estopped from raising the affirmative defense of a time-to-sue provision." *Id.* "'Estoppel arises when an individual has been induced by the conduct of another to do, or forebear from doing, something he would or would not have done but for such conduct.'" *Id.* ¶ 10 (quoting *Young*, 101 N.M. at 547-48). "'The acts and conduct generally held to constitute a waiver of a time-to-sue provision are those acts which would lull the insured into reasonably believing that its claim would be settled without suit.'" *Id.* (quoting *Peoples State Bank v. Ohio Casualty Ins. Co.*, 96 N.M. 751, 752-53 (1981)).

Here, Plaintiffs might possibly be able to show that estoppel should apply. *See* Doc. 15 at 7; Doc. 24 at 2. The First Amended Complaint alleges that Sentinel failed to timely respond to or process the claim even though "Plaintiffs maintained contact" with the insurer and "provided Defendants with all of the information they requested from Plaintiffs." First Am. Compl. ¶ 20. It also alleges that "Defendants made false statements to Plaintiffs that they were covered for their business loss." *Id.* ¶ 36. Under New Mexico law, "'waiver of a time-to-sue provision may be accomplished by slight acts and circumstances, and must be determined by the facts of the

case.'" *Green*, 1987-NMSC-111, ¶ 12 (quoting *Peoples State Bank*, 96 N.M. at 752; alterations omitted). An estoppel argument would therefore require much more factual development in order to adjudicate it. The Court does not adopt Sentinel's argument regarding the limitations provision at this time.

      C.  <u>The Allegations Against Defendant Beaudry May Be Amended.</u>

The proposed Second Amended Complaint contains additional allegations concerning Defendant Beaudry's alleged UPA violation. *See* Doc. 20-1 at 5. Sentinel argues that the proposed amendments to the UPA claim would be futile. Doc. 22 at 4-5. But both Sentinel and Plaintiffs agree that the additional language proposed with respect to the UPA claim is not directed to Sentinel. Doc. 22 at 4 ("the Unfair Trade Practices Act claim in Plaintiffs' amended complaint was not directed to Sentinel; none of the factual allegations concerned it."); Doc. 24 at 2 ("The Unfair Trade Practices Claim (Count IV) is an alternate count directed against Defendant Beaudry . . . .").

Defendant Sentinel has no basis to object to a proposed amendment concerning Defendant Beaudry. Defendant Beaudry has not been served, entered an appearance, or moved to dismiss any claims against him.[4] Thus, the Court orders that Plaintiffs may file an amended complaint that includes additional allegations that pertain to Defendant Beaudry.

## IV. <u>Conclusion</u>

For the above stated reasons, Plaintiffs' Motion For Leave To File Amended Complaint is **GRANTED**. Plaintiffs shall file a Second Amended Complaint within 10 days of the date of

---

[4] The parties agree that Defendant Beaudry has not been served. Doc. 22 at 1 n.1; Doc. 24 at 2. Plaintiffs' time for serving Defendant Beaudry has long since expired. Fed. R. Civ. P. 4(m). The Court issues a concurrent Order to Show Cause under Rule 4(m).

this Order. The filing of the Second Amended Complaint will moot Sentinel's pending motion to dismiss the First Amended Complaint (Doc. 6),[5] and the Court directs Sentinel to file a notice withdrawing that motion after the Second Amended Complaint is filed. If Sentinel wishes to move to dismiss the Second Amended Complaint, it shall file a new motion within the time frame permitted by Federal Rule of Civil Procedure 15(a)(3).

                                                          _____
                                                          STEVEN C. YARBROUGH
                                                          United States Magistrate Judge

---

[5] *See Baca v. Quick Bail Bond & Tax Serv.*, No. CV 18-16 JCH/GBW, 2018 WL 3862744, at *1 (D.N.M. Aug. 14, 2018) (unpublished).